Thomas GRAHAM

v.

**ACME MARKETS, INC.**, Food Employers Labor Relations, Inc., and Highway Truck Drivers and Helpers, Local 107.

Civ. A. No. 44239.

United States District Court
E. D. Pennsylvania.

April 17, 1969.

Edward B. Bergman, of Solo, Abrams, Bergman, Trommer & Padova, Philadelphia, Pa., for plaintiff.

F. Emmett Fitzpatrick, Jr., M. Kalman Gitomer, Philadelphia, Pa., for defendants.

## OPINION AND ORDER

BODY, District Judge.

### I.

This case is before this Court after being remanded by the Court of Appeals. The facts of the case as found by the arbitrator, G. Allan Dash, Jr., in his "Opinion and Decision" are as follows:

"At approximately 8:00 P.M. on August 9, 1967 several female employees and one male employee of the Teamsters Health and Walfare Fund appeared with picket signs at the Distribution Center No. 4 of the above-named Company [defendant]. (Earlier that evening other female pickets had gone to the Company's Distribution Center No. 1) They appeared at both warehouses apparently seeking to bring pressure upon an official of Acme Markets, Inc., one of three Trustees of the noted Fund, to aid them in securing collective bargaining rights with the Fund and its Trustees through their representative, the Independent Union of Office Workers.

Employee Thomas Graham, the Union's sole Night Steward at the No. 4 Center, arrived there at approximately 8:15 P.M. He talked to the pickets and thereafter indicated to any and all Acme Drivers who spoke to him that he considered the picket line legitimate, that he did not intend to cross it, and that he was going home. Despite this last assertion he remain-

ed in the area until approximately 1:15 A.M. the next day. (Business Agent Charles Amoroso was also in the area the large majority of this time.) None of the 43 Drivers and 12 Helpers, scheduled to take out 63 loads of perishable products at 9:00 P.M. and 11:00 P.M., did so. Shortly after Steward Graham left for his home the pickets left, and he was notified by the Business Agent and Company supervision of this fact. He returned to the Center, telephoned the Drivers, and the scheduled loads began moving by approximately 4:00 A.M., on August 10, some seven hours late. All scheduled loads had left between 9:00 and 9:30 A.M.

On August 10, 1967 the Company posted a notice to the effect that the 'illegal work stoppage' of the prior night was being investigated, and that the Company reserved its right to take appropriate discipline, including dismissal, upon completion of the investigation.

On August 12, 1967 Steward Graham and the Union were notified by the Company of its proposed action of 'discharge for misconduct in re. illegal work stoppage Wednesday, August 9, 1967 * * *.'

On August 15, 1967, the Company notified Steward Graham, by letter, as follows:

'In compliance with the Collective Bargaining Agreement this is to give you formal written confirmation of your discharge for misconduct in connection with the illegal work stoppage on Wednesday, August 9, 1967. Such discharge being effective Tuesday, August 15, 1967.'

Under date of August 16, 1967 the Company posted a notice informing its employees that its investigation of the August 9 stoppage had been completed, and informing them, in addition, as follows:

'The Company's evidence and finding was presented to the Common Pleas Court of Philadelphia County which ruled on August 15, 1967 that Local 107 Business Agent Amoroso and Steward Thomas Graham were responsible for the illegal work stoppage which began Wednesday, August 9, 1967.'

On August 16, 1967 Steward Graham filed a written grievance reading:

'I am protesting the charges filed against me leading to my discharge. The Company, I feel, is discriminating against me, as there were men who had reported for work before I arrived at the WHSE, Aug. 9–1967 and saw the pickets and refused to cross the picket line and therefore went home. As of this improper discharge I am claiming all lost earnings from and including 8–14–67 and all damages incurred till I am reinstated.'

On August 18, 1967 the Union filed a protest with the Company against its discharge of the grievant and requested a meeting to discuss the action. The meeting was held in accordance with the Grievance Procedure Article VIII). The issue was thereafter processed before the FELR Joint Board on September 7, 1967. When that Board was deadlocked, the issue was then processed to the undersigned Arbitrator, as provided in Article VIII, at an October 25, 1967 arbitration hearing. The Company's case was handled by M. Kalman Gitomer, Esq., and the Union's by F. Emmett Fitzpatrick, Jr., Esq. Present on behalf of and to represent Mr. John Greely, Trustee for Local 107, was Edward Davis, Esq.

Evidence, testimony and arguments were presented by the parties to support their respective positions. The Arbitrator has considered the entire record in arriving at his decision."

The plaintiff sought a reversal of the arbitrator's decision by filing a complaint in equity in the Court of Common Pleas of Philadelphia County. Defendants, Acme and F.E.L.R., removed the action to the United States District

Court and filed a motion to dismiss the complaint. This motion was granted by this Court on December 21, 1967. The Court stated:

"* * * the arbitrator acted within the scope of his authority in determining that plaintiff Graham's discharge was proper and for just cause * * * the arbitrator's decision and award on the merits of the case are not subject to judicial review."

Thereafter, plaintiff filed a motion for reargument, based upon an amended complaint which averred that the arbitrator had ignored specific language in Article III, Section 2, of the Master Food Agreement which reads in part "* * * under no circumstances shall an Employer discriminate against a steward because of his activities as such." This was the basic change made in the original complaint. The plaintiff contended that the award by the arbitrator was at variance with the specific language of the contract.

This Court thereupon wrote counsel on February 12, 1968:

"This letter is to confirm in writing that my bench decision to deny plaintiff Graham's Petition for Reargument in the above case was entered on the merits of the case. As I have explained by telephone to counsel for plaintiff and defendants, I do not feel that reargument could change my opinion that plaintiff's original motion did not contain sufficient merit."

Plaintiff then appealed from this denial for reargument based upon the amended complaint.

The Court of Appeals on October 11, 1968 remanded the case to this Court having vacated this Court's judgment. The Court of Appeals stated:

"The court below should have brought upon the record the award of the arbitrator and, under the circumstances at bar should, we think, have adjudicated the amended complaint which the plaintiff, the appellant, filed. * * * Whether the court below should receive evidence upon remand is an issue which we leave to its sound discretion."

The defendant [appellee] filed a motion to dismiss the amended complaint and motion for reargument. This Court will treat defendant's motion as one for summary judgment under Rule 56. There is "no genuine issue as to any material fact", and both parties indicate a preference for such a disposition in their briefs.

## II.

■ The recent decision in this Circuit in the case of Ludwig Honold Mfg. Co. v. Fletcher, 405 F.2d 1123 (3rd Cir., 1969) states the standard by which district courts should be guided in deciding whether judicial interference with the arbitrator's award is proper or not. The Court states that the award must be upheld if it can be based upon "any rational interpretation of the collective bargaining agreement".

■ This Court believes that the arbitrator's "Opinion and Decision" does "draw[s] its essence from the collective bargaining agreement"[1] and is not in "manifest disregard of the agreement".[2] In determining that the arbitrator's interpretation can be rationally derived from the agreement, this Court has carefully considered the agreement, award and circumstances of this case. In light of the above conclusion this Court refuses to interfere with the arbitrator's award and, thus, will grant a summary judgment in favor of the defendant.

The plaintiff in its amended complaint alleges that the arbitrator did not consider Article III, Section 2, in his deliberations and award. He contends that therefore the arbitrator was not acting within the scope of his authority and that the award must be set aside. The

---

1. United Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed. 2d 1424 (1960).

2. Ludwig Honold Mfg. Co. v. Fletcher, supra, 405 F.2d 1128.

crux of plaintiff's complaint is that (1) the arbitrator did not specifically consider the applicability of Article III, Section 2; (2) the facts and conclusions of "law" as found by the arbitrator fall within the prohibitions of Article III, Section 2; and (3) therefore, the arbitrator's award should be set aside.

The defendant on the other hand argues that (1) the arbitrator found the plaintiff to have been the leader of the work stoppage; (2) the arbitrator was acting within the scope of his authority by finding that plaintiff was dismissed for "just cause"; (3) the arbitrator squarely faced the issue of discrimination and rejected it; and (4) therefore, the arbitrator's award is not subject to judicial review since otherwise there was no showing of fraud, bias or corruption.

Before discussing this Court's conclusions with respect to the relative merits of plaintiff's and defendant's arguments, it seems appropriate to note the arbitrator's interpretation of the collective bargaining agreement as it bears on the instant facts.

The arbitrator's decision is based upon the following conclusion:

"It was the grievant's [plaintiff] responsibility (Article III), as the sole Steward present for the men to look to, to see that the men did not honor the picket line and engage in a work stoppage in violation of Article XXVII, Section 5."

(p. 17 arbitrator's "Opinion & Decision")

Article III, Section 1, of the Agreement states in part:

" * * * The sole function of the Steward shall be to see that the terms of this Agreement are fulfilled both by the Employer and by the employees. Shop stewards shall have no authority to take strike action in violation of this Agreement interrupting Employer's business."

Article XXXIII, Section 5, of the Agreement, Mutual Guarantees, states in part:

" * * * There shall be no work stoppage or threats thereof except as spe-cifically permitted under the provisions of Article VIII."

The arbitrator further states that:

"The responsibility for determining the 'lawfulness' of the picket line, and to impart that knowledge to the employees, rested with him under the terms of the Agreement and the circumstances of the case, and he cannot escape that responsibility by arguing that no provision specifically records that responsibility with exactness."

(p. 17 arbitrator's "Opinion & Decision")

The arbitrator also found that:

" * * * He knew that the pickets were not a 'lawful' primary picket line, and that the Teamsters Joint Council No. 53 had not approved or sanctioned it as required by Article X."

(p. 15 arbitrator's "Opinion & Decision")

In addition:

" * * * the grievant had every right to expect that they would follow his example in honoring the picket line or in passing through it."

(p. 14 arbitrator's "Opinion & Decision")

The arbitrator answered the Union's charge of discrimination, stating that:

"The Union's charge of discrimination against the grievant simply is not sustained in the record."

(p. 16 arbitrator's "Opinion & Decision")

Finally, the arbitrator states:

" * * * the employee or employees responsible for encouraging, leading and/or directing the stoppage establish 'just cause' for imposition of the most severe form of discipline, i. e., discharge."

(p. 18 arbitrator's "Opinion & Decision")

This Court believes that such an interpretation is reasonable and rational. While it might be possible that one could arrive at the conclusion that the Steward

had no affirmative duties to prevent a work stoppage, such a conclusion, even if held by this Court, would not allow this Court to overturn the arbitrator's award. As this Court reads the *Honold* decision, if the district court finds that the arbitrator's award is based upon a rational interpretation of the contract, it must be sustained. This Court is mindful of the peculiar expertise of the labor arbitrator which was noted by the Supreme Court in United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 581, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960), where it stated:

> "The labor arbitrator performs functions which are not normal to the courts; the considerations which help him fashion judgments may indeed be foreign to the competence of courts."

There were certain facts, besides the fact that plaintiff was Steward, which tend to show that the plaintiff encouraged the work stoppage. The arbitrator not only found that the plaintiff had knowledge of the illegality of the pickets at the warehouse, but that he told everyone he spoke to that he was going to observe it and also that he was going home, but in fact stayed around until shortly before the pickets left early the next morning. Even if these actions in and of themselves were not enough to establish a violation of the work stoppage agreement, under the arbitrator's view of the responsibilities of a Steward they are enough to show a breach of the agreement and constitute "just cause". The Supreme Court in United Steelworkers of America v. Enterprise Wheel and Car Corp., supra, states:

> " * * * so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." (at 599, 80 S.Ct. at 1362)

Having determined that the arbitrator's "Opinion and Decision" were within the scope of his authority, the Court now turns to the crux of the amended complaint. The plaintiff claims that in order for this Court to uphold the arbitrator's award, it must find that the arbitrator specifically considered Article III, Section 2, which reads:

> "Layoff
>
> If it shall be necessary for an Employer to lay off employees because of lack of business, the steward shall be the last employee to be laid off in his job classification, and under no circumstances shall an Employer discriminate against a steward because of his activities as such."

The plaintiff claims that the findings of the arbitrator clearly show that Article III, Section 2, was not considered and if it had been considered, the plaintiff could not have been discharged for "just cause" because he did no more than the other employees in encouraging the work stoppage.

Since the arbitrator found that the plaintiff had a higher duty than an ordinary employee because he was the Steward, it logically follows that Article III, Section 2, ("under no circumstances shall an Employer discriminate against a steward because of his activities as such") could not possibly be applied to the plaintiff's situation. Under the circumstances of this case, one of the arbitrator's specific conclusions was that the plaintiff could not be just an ordinary employee.

There is no rule of law which requires an arbitrator to write opinions with great specificity as a court of law.[3] One of the reasons for arbitration is to settle disputes out of court. Therefore, one cannot draw the conclusion that the arbitrator did not cover a specific item in an agreement where that item is not specifically mentioned. Nor should this Court assume that the arbitrator did not consider Article III, Section 2, because the arbitrator merely found that there had been no discrimination, without mentioning Article III, Section 2.

---

3. United Steelworkers of America v. Enterprise Wheel and Car Corp., supra, at 598, 80 S. Ct. at 1361.

 

The Supreme Court in *Enterprise* states:

"A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award."[4]

While it is probable, in this Court's opinion, that the arbitrator did consider Article III, Section 2, in his deliberations,[5] it is equally probable that the arbitrator attached little or no importance to it in light of his interpretation of the agreement and also because plaintiff's counsel did not press the application of Article III, Section 2, upon him. The first time the Article III, Section 2, agreement appears in the record of this case is in plaintiff's amended complaint filed some time after the arbitration proceedings.

The interpretation of the arbitrator notwithstanding, this Court does not believe that Article III, Section 2's applicability approaches to any substantial degree the situation which confronted the Court of Appeals in H. K. Porter Co., Inc. v. United Saw, File and Steel Products Workers of America, 333 F.2d 596 (3rd Cir., 1964). In that case the labor contract provided for eligibility to those employees who had attained 65 years of age and 25 years of employment service. The employer appealed from an award granting pension eligibility, on a pro rata basis, to those employees who had reached age 65 but who had not completed 25 years of service at the time their employment was terminated. The Court of Appeals stated:

" * * * absent any provision either explicitly or implicitly authorizing the Arbitrator's ruling * * *, or any prior practice which reasonably could so interpret it, he lacked a basis for his conclusion. * * * We find that * * * the Arbitrator had no ground upon which to base this interpretation of the clear and unambiguous words of the eligibility clause. * * *"

In the instant case, not only are the words of Article III, Section 2, not clear and unambiguous as to the situation intended to be covered, but there is a reasonable interpretation by the arbitrator which automatically eliminates its applicability to the plaintiff.

## ORDER

And now, this seventeenth day of April, 1969, it is ordered that summary judgment be entered in favor of the defendant.

---

4. Ibid.

5. He stated, "The Arbitrator has considered the entire record in arriving at his decision."