**BETHLEHEM MINES CORPORATION,**
Plaintiff,

v.

**UNITED MINE WORKERS OF AMER-
ICA et al., Defendants.**

Civ. A. No. 72–275.

United States District Court,
W. D. Pennsylvania.

June 21, 1972.

Donald B. Heard, Kathleen A. Merry, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for plaintiff.

Lloyd Engle, Jr., Melvin P. Stein, Kuhn, Engle & Blair, Pittsburgh, Pa., Eugene A. Creany, Ebensburg, Pa., for defendants.

## FINDINGS AND OPINION

WEBER, District Judge.

This is an action seeking declaratory relief under 28 U.S.C. § 2201 to construe

the obligations of a collective bargaining agreement between the parties and seeking injunctive relief. Jurisdiction is based on 29 U.S.C. § 185. Neither jurisdiction of this court to hear this matter nor its power to grant declaratory relief is disputed.

On December 15, 1971 this court issued a Preliminary Injunction at Civil Action No. 71–1109 compelling these plaintiffs and defendants to abide by the compulsory and binding arbitration provisions of their collective bargaining agreement with reference to disputes arising at Plaintiff's Mine No. 33 which occasioned a work stoppage. On March 21, 1972, plaintiff filed a petition in this court for a citation of civil contempt because of another work stoppage at the same mine in the same union over a dispute subject to arbitration. The court ordered the matter at issue, a grievance by an employee-member of Local 1368 to be submitted to the plaintiff under the grievance procedure. In accordance with the provisions of the grievance procedure the matter passed through the various stages up to Step 3. At this point the grievance procedure broke down and the matter was brought before this court. The defendant Union contends that the matter must be referred to Maurice Shadden because for many years prior to the present dispute District #2 of the United Mine Workers, which represents the miners in the Central Pennsylvania area where plaintiff's mines are located and whose Local Unions represent the miners in plaintiff's affected mines, have appointed and utilized a permanent umpire to resolve grievances that have reached the final step of the Settlement of Local District Disputes procedure. The plaintiff, on the other hand, contends that it is not bound to accept Maurice Shadden as the umpire * and plaintiff asks that the court order the arbitration to proceed under some method agreed to by the parties or directed by the court whereby the selection of the final arbitrator will be the result of mutual selection between the parties.

The relevant contractual obligations between the parties are set forth in the National Bituminous Coal Wage Agreement of 1971, effective November 12, 1971, signed on behalf of the plaintiff by the Bituminous Coal Operators Association, Inc., and on behalf of the defendant Unions by its bargaining agent, the United Mine Workers of America.

The relevant portion of the above agreement applicable to the present situation is as follows:

"Article XVII—Settlement of Disputes, Section (b) Grievance Procedure

(5) Should the Board fail to agree the matter shall, within ten calendar days after decision by the Board, be referred to an umpire who shall expeditiously and without delay decide said case. The decision of the umpire shall be final. . . . .".

Another pertinent provision of said Article XVII of the 1971 agreement is as follows:

"Section (c) Joint Committee on Arbitration Procedure.

A committee of equal representation from the Employers and the Union will be appointed immediately after the execution of this agreement to study the feasibility of a permanent or chief umpire and/or a panel of umpires to arbitrate disputes which may arise under the terms of the agreement.

The committee will examine methods of selection, tenure, compensation and related matters and will complete its report and recommendations no later than April 1, 1972."

As of this date the above-mentioned committee has not completed its examination nor rendered its report.

It is the contention of plaintiff that the above-recited section is the only controlling agreement between the parties on the mechanics of arbitration. Plain-

* An "umpire" is a sole arbitrator.

tiff contends that it is not bound by any other agreement or any former or prior practice in this matter.

The 1971 agreement also contains the following provision:

"Article XIX—DISTRICT AGREEMENTS.

Section (b) Prior Practice and Custom

This agreement supersedes all existing and previous contracts except as incorporated and carried forward herein by reference; and all local agreements, rules, regulations and customs heretofore established in conflict with this agreement are hereby abolished. Prior practice and custom not in conflict with this agreement may be continued, . . . . . Wherever a conflict arises between this agreement and any district or local agreement, this agreement shall prevail."

The defendant contends that District #2, United Mine Workers of America, being the District including the Local Union whose members are employed by plaintiff, entered into an agreement with the Central Pennsylvania Coal Producers Association in 1941 which contained the following provision:

"Settlement of Disputes

. . . Should the Fourth Method fail, the matter shall be referred to a permanent board of arbitrators consisting of two Mine Workers, or their representatives, and the Operators, or their representatives. They jointly failing to agree shall refer the matter to a permanent umpire to be selected jointly by the Operators and the United Mine Workers of America, District No. 2.",

and that plaintiff by local custom or ratification is bound to use the same permanent umpire.

The plaintiff is not a member of the Central Pennsylvania Coal Producers Association nor was the Central Pennsylvania Coal Producers Association ever authorized to act as its representative either for the purpose of entering into an agreement with District No. 2 or for the purpose of executing the National Agreement. Plaintiff was represented by the Bituminous Coal Operators' Association, Inc. in negotiating the National Agreement. Nevertheless, in all grievances that proceeded to the stage of reference to the arbitrator, for some years prior to the expiration of the National Bituminous Coal Wage Agreement of 1968 on September 30, 1971, Plaintiff did submit such grievances to Maurice Shadden, who had been previously selected as a permanent umpire by the Central Pennsylvania Coal Producers Association and District No. 2, under the district agreement of 1941.

In addition to the fact that there is no evidence that Bethlehem Mines was ever a signatory to or bound by the District #2 agreement with the Central Pennsylvania Coal Producers Association, there is also the evidence on the record of this case that the Central Pennsylvania Coal Producers Association gave timely, formal written notice of its intention to terminate that portion of its agreement with District No. 2, United Mine Workers, pertaining to the use of Umpire Maurice Shadden on a permanent basis prior to the expiration of the 1968 National Agreement. Therefore, if in any way it could be construed that Bethlehem Mines was obligated to use the practice prevailing in District #2 under the Central Pennsylvania Coal Producers Association agreement, Bethlehem's obligation to continue this would have been terminated by the termination of that agreement between those parties.

■ While the 1971 National Agreement specifically incorporates the various district agreements then in force insofar as they are not in conflict with the 1971 Agreement, we can have no basis on which to conclude that Bethlehem became bound by the terms of the Central Pennsylvania Coal Producers Agreement with District No. 2 because Bethlehem was not a party to that agreement. We hold that proper interpretation of the above-cited provision of the 1971 Agreement means that the terms of old dis-

trict agreements not inconsistent with the 1971 Agreement are continued in effect between the parties to those agreements. The defendant argues that Bethlehem is bound to use the permanent umpire because of its prior custom and practice and particularly so because it never served written notice of its intention to discontinue such practice. However, Bethlehem was never bound by any written agreement to use the services of the permanent umpire and, therefore, there is no requirement of a formal method of termination of this past practice.

The evidence further establishes that the plaintiff had expressed dissatisfaction with the situation of a permanent umpire in District #2 and unwillingness to continue the practice prior to the expiration of the 1968 National Agreement of September 30, 1971. The evidence further shows that the plaintiff's mine superintendent, prior to the execution of the 1971 National Agreement, had informed the Union that the services of the permanent umpire would no longer be acceptable to Bethlehem Mines Corporation. Specifically, the last time the present parties were before this court on a matter growing out of a contract dispute which the parties were ordered to take before arbitration, the representative of Bethlehem Mines then expressed his opposition to the use of Mr. Shadden, the permanent umpire, as arbitrator, but agreed to the use of Mr. Shadden in that particular case. This was prior to the execution of the National Agreement of 1971.

In summary, there is no evidence to show that the plaintiff Bethlehem Mines was bound by any formal written agreement to use the services of the permanent umpire selected by mutual agreement between the Central Pennsylvania Coal Operators and the United Mine Workers District No. 2, nor had Bethlehem ever ratified or adopted such agreement. Furthermore, there is no evidence that Bethlehem is bound to continue with a past practice to which it has given sufficient notice that it would no longer continue. To the extent that Bethlehem has bound itself by custom and practice to use the procedures previously agreed upon between District No. 2 and the Central Pennsylvania Coal Producers Association we find that agreement to have been abrogated by the notice of the Central Pennsylvania Coal Producers Association that such practices would no longer be continued.

Defendant argues that the court should refrain from action in this case as a matter of judicial discretion for two reasons:

■ First, defendant argues that the court should refrain because the obvious intent of the 1971 agreement to which the parties to this case are signatories is that a system of submission to arbitration of all disputes to arbitration on an industry wide basis is being developed under the provisions of Article XVII (c) which would resolve the present difficulty. It is true that the parties in the 1971 National Agreement expressed their intention of setting up such a machinery consisting of a permanent or chief umpire and/or a panel of umpires but nothing has been accomplished to carry out this intention and the parties are faced with the need for immediate resolution of their problem.

■ The second argument of defendant is that the present dispute between the parties is a procedural dispute under the contract which must be determined by an arbitrator and not by the court. We recognize the principle of law that procedural disputes growing out of a matter which is subject to arbitration are to be determined by the arbitrator and not by the court. John Wiley & Sons Inc. v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 [1964]. However, we do not find it applicable to this case. The very heart and substance of the procedure of arbitration is the designation of the arbitrator by mutual agreement, whether for a particular case or for a particular period of time. Ever since 1941 the various National Bituminous Coal Wage agreements contained

provisions that the selection of an umpire be by mutual agreement. This was contained in the 1968 National Agreement which expired September 30, 1971 under which the parties previously operated. The omission of this language from the 1971 National Agreement is explained by the insertion of the explanatory material contained in Section (c) of Article XVII regarding the intention of the parties to establish a system of permanent umpires. But much broader than the particular expression in the prior agreement that the selection of arbitrator be by mutual agreement is the essential element that the selection of the particular arbitrator or the method of selection of an arbitrator be established by mutual agreement between the parties.

We believe that national labor policy as it is set forth in the legislative history of the Labor Relations Act, in the statutes themselves, and in the judicial interpretation is that arbitration shall be the favored instrument for the settlement of labor disputes. See the *Steelworkers* trilogy, 363 U.S. 564, 574 and 593, 80 S.Ct. 1343, 1347 and 1358, 4 L. Ed.2d 1403, 1409 and 1424 [1960]. An essential element of arbitration is that the arbitrators selected must be mutually agreeable or acceptable to the parties.

By definition, an arbitrator must be a person chosen by mutual agreement:

"An arbitrator is a judge of the parties' own choosing, or the person selected by the parties to an arbitration agreement or submission to determine the matters submitted." 6 C.J. S. Arbitration & Award § 40 p. 181. Burchell v. Marsh, 58 U.S. 344, 15 L. Ed. 96 [1854] 5 Am.Jur.2d, Arbitration & Award, § 84, p. 583.

"Arbitration agreements are aimed at amicable determination of disputes with results which both parties will be willing to accept. Toward this end, it is desirable that the arbitration panel consist of arbitrators chosen by each of the parties. Where imbalance is unnecessarily effected the purpose and advantages of arbitration are defeated." Matter of the Arbitration between Lobo & Co. Inc. v. Plymouth Navigation Co., 187 F.Supp. 859 [S.D. N.Y.1960].

In a case involving the failure of an administrator to convey information supplied by an arbitrator of a possible conflict of interest, the court vacated the award, stating:

"It goes to the heart of a body designed to resolve controversy—its integrity. In this instance it fails to protect what might be termed 'due arbitration process.'" Rogers v. Schering Corporation, 165 F.Supp. 295 [D. N.J.1958].

We do not suggest that the parties cannot agree in advance to a standing umpire who shall arbitrate all disputes that arise between the parties over a given period of time. This implies that at some time there has been mutual agreement upon the selection of the arbitrator. In the present case there is no evidence of any agreement on the method of selection of the permanent umpire between the parties to this law suit or any agreement upon any particular person. Under this set of circumstances we can see no basis for the Union's insistence that this is a procedural matter which must be referred to the umpire. We find no basis for compelling the plaintiff to submit the very question at issue to the individual over whom the dispute centers. It is fundamental that one cannot be compelled to submit a matter to arbitration before a particular individual where there is no agreement as to the method by which that individual is chosen.

We conclude that the plaintiff is not compelled by any contract, agreement, past practice, or principle of labor law, to submit the present grievance between the parties to Umpire Maurice Shadden. We further conclude that in the absence of any contractual provision between the parties, or binding practice between the parties, that the selection of the arbitrator must, in accordance with the funda-

mental principles of arbitration, be done by some method to which the parties have mutually agreed. We further conclude that this is not a procedural problem because the only existing agreement between the parties, the 1971 National Agreement, while recognizing this problem, has not yet provided its solution. Its submission to an arbitrator would result in the arbitrator's writing a new contract between the parties rather than interpreting an existing contract.

The submission of this question to the former permanent umpire would violate the basic principle of arbitration that the arbitrator shall have been mutually agreed upon.

█ A final objection is posed by the defendant that the court has no authority to determine the manner in which an arbitrator shall be selected. We do not believe that this is a tenable position. In a case where equitable relief is sought the court has the power to frame appropriate and effective relief, ancillary to a proper order, under the All Writs Act, 28 U.S.C. § 1651. See Application of President and Directors of Georgetown College, 118 U.S.App.D.C. 80, 331 F.2d 1000 [1964]. Furthermore, in the *cornerstone* case involving the formulation of a national labor policy of arbitration, Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 [1957], the United States Supreme Court stated:

> "We conclude that the substantive law to apply in suits under § 301(a) is federal law, which the courts must fashion from the policy of our national labor laws . . . . Other problems will lie in the penumbra of express statutory mandates. Some will lack express statutory sanction but will be solved by *looking at the policy of the legislation and fashioning a remedy that will effectuate that policy.*" (emphasis supplied).

█ The federal labor policy to be invoked here is the resolution of industrial disputes by arbitration. When the court's jurisdiction is properly invoked, as it is here, under Section 301 of the Labor Management Relations Act, the court has the power to frame relief which will be effective to carry out the national labor policy of arbitration of industrial disputes.

The courts have faced this problem in a number of situations where the parties have agreed to binding arbitration but have failed to agree upon an arbitrator. See Deaton Truck Line v. Local 612, 314 F.2d 418 [5th Cir., 1962]; Textile Workers Union v. American Thread Co., 113 F.Supp. 137 [D.C.Mass.1953]; General Electric Co. v. Local 205, 353 U.S. 547, 77 S.Ct. 921, 1 L.Ed.2d 1028 [1957]; Engineers Association v. Sperry Gyroscope Co., 251 F.2d 133 [2nd Cir., 1957].

This court is not without guidelines. Section 5 of the Federal Arbitration Act, 9 U.S.C. § 5, provides that if the parties are unable to agree within ten days to an arbitrator one may be appointed by the court. The regulations establishing the Federal Mediation and Conciliation Service, 29 C.F.R. 1404.6 and .7, provides a method of selection of arbitrators by mutual agreement. The practice prevailing throughout all of American industry is to obtain an odd-numbered panel of names from an independent source such as the Federal Mediation and Conciliation Service or the American Arbitration Association and allowing each party to strike names therefrom in rotation until there is one remaining. We do not believe that in adopting such a practice the court is making a new contract for the parties but rather it is simply ordering the carrying out of arbitration in the form and manner in which that practice is ordinarily understood.

The courts have not hesitated to act in such a situation:

> "Defendant's final point is that this case cannot be sent to arbitration because no arbitrator has been named under the 1951 memoranda. But this defect can be and should be cured by this Court adopting as a guiding anal-

ogy the practice under § 5 of the Federal Arbitration Act, 9 U.S.C. § 5. If the parties are unable within ten days to agree upon an arbitrator, this Court will appoint one." Textile Workers Union v. American Thread Co., 113 F.Supp. 137 [D.Mass.1953].

See also: Deaton Truck Line v. Local 612, 314 F.2d 418, [5th Cir., 1962].

The United States Supreme Court has recognized the broad powers of the District Courts to fashion remedies adequate to the problems arising in labor disputes under Sec. 301 of the Labor Management Relations Act of 1947. See General Electric Co. v. Local 205, United Electrical, etc. Workers, 353 U.S. 547, 77 S.Ct. 921, 1 L.Ed.2d 1028, [1957]. In that case the Court of Appeals had found a basis in the United States Arbitration Act, 9 U.S.C. § 1, for compelling arbitration. The Supreme Court sustained the result of the Court of Appeals but did so on the basis that Section 391(a) furnished a body of substantive law for the enforcement of collective bargaining agreements by allowing the issuance of an injunction to enforce the agreement to arbitrate.

■ The 1971 National Agreement clearly requires the processing of grievances through compulsory and binding arbitration. The 1971 Agreement does not provide for the manner of choice of the final arbitrator, although it expresses the intention of doing so at a later date. There is nothing to bind the plaintiff to any particular mode of choice of arbitrator. We have a grievance that has proceeded to the final stage of the arbitration process. The only disagreement between the parties is the insistence by defendant that the prior permanent umpire continue to serve. We have found no basis to compel plaintiff to accept this. Therefore, in the absence of agreement between the parties the court is required to fashion the remedy to carry out its order compelling arbitration. An appropriate order will be entered.

ORDER

And now, this 21st day of June, 1972, after hearing in open court, it appearing that a justiciable issue exists at this time between Plaintiff and Defendants, and that a Declaratory Judgment is necessary to settle the legal obligations of the parties under a collective bargaining agreement, and to permit the parties to abide by the Order of this court issued December 15, 1971, concerning the grievance of John Rafacz, an employee member of Local 1368 of Defendant Local Union; and it further appearing that failure to resolve said differences may result in a work stoppage to the serious and irreparable damage to plaintiff,

It is ordered, adjudged and decreed that:

(1) Plaintiff and Defendant Unions are legally obligated to settle disputes subject to the grievance procedure of Article XVII of the National Bituminous Coal Wage Agreement of 1971 by the grievance procedure provided by said article through Step 5 of said grievance procedure calling for final arbitration by an umpire;

(2) The said parties are obligated to submit Step 5 of said grievance procedure to an umpire selected by mutual agreement of the parties;

(3) Plaintiff is not obligated under Article XVII of the 1971 National Bituminous Coal Wage Agreement to accept the services of Maurice Shadden as umpire under Step 5 of the grievance procedure of said agreement, on a permanent basis or otherwise, in the grievance of John Rafacz;

(4) Plaintiff and the Defendant Unions, United Mine Workers of America; United Mine Workers of America District No. 2, and United Mine Workers of America, Local Union No. 1368 are bound by the provisions of Article XVII of the National Agreement to refer their grievance to final and binding arbitration by an umpire upon the completion

of Step 4 of said grievance procedure of Article XVII.

(5) The said umpire shall be a person selected by mutual agreement of the parties within ten days of the date of this Order; or, in the event of their failure to do so the court, upon application of either party, will designate the manner of selection by the parties;

(6) Plaintiff is under no legal obligation under the terms of Article XVII to have the final umpire present at Step 4 of the grievance procedure;

(7) Plaintiff is under no legal obligation under the terms of Article XVII to have testimony taken at Step 5 of the grievance procedure;

(8) The action is hereby dismissed as to individual defendants W. A. Boyle, William A. Risbon, Frank Claypool, George W. Commons, and Charles D. Neff, because the court has no jurisdiction over individual members of a labor organization under Sec. 301 of the Labor-Management Relations Act.

(9) Defendants United Mine Workers of America, United Mine Workers of America District #2, and United Mine Workers of America Local 1368, their officers, representatives, and members and all persons acting in concert with them or on their behalf are permanently enjoined from engaging in a strike or work stoppage at Plaintiff's Mine No. 33 and/or its adjacent Preparation Plant in Cambria County, Pennsylvania, to enforce their demand that Umpire Maurice Shadden be appointed Umpire under Step 5 of the Grievance Procedure of Article XVII, and/or be present at Step 4 of the Grievance Procedure in this dispute.

(10) The officers and representatives of Defendants United Mine Workers of America, United Mine Workers of America District #2, and United Mine Workers of America Local 1368 are directed to take all action which may be necessary to assure compliance with the terms of this Order.