**AMALGAMATED MEAT CUTTERS & BUTCHER WORKMEN OF NORTH AMERICA, LOCAL 195, AFL–CIO**

v.

**CROSS BROTHERS MEAT PACKERS, INC.**

Civ. A. No. 72–2223.

United States District Court,
E. D. Pennsylvania.

July 20, 1973.

Howard J. Casper, Philadelphia, Pa., for plaintiff.

Richard S. Meyer, Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION

BECHTLE, District Judge.

This is an action by a local union requesting an order vacating an arbitrator's decision awarding the defendant-employer $14,826.43 for damages caused by the local's breaching of the no-strike provision of a collective bargaining agreement.[1]

After the local replied to a counterclaim included in defendant's answer to the complaint, the defendant filed a motion, now before this Court, for judgment on the pleadings. The motion seeks, in addition to the dismissal of the complaint, the enforcement of the arbitrator's award and the relief demanded in the counterclaim.

On July 1, 1971, the day after their collective bargaining agreement had expired, the employees struck and picketed the facility of their employer, Cross Bros. Hotel Supply, Inc., a purveyor of meat and meat products to hotels and other institutional users. The facility was located at 3550 North Front Street, Philadelphia, Pennsylvania. Some of these same employees also picketed the entranceways to defendant's meat processing and packing plant at 3600 North Front Street, less than a city block away. For our purposes, defendant's employees at the latter plant are divided into at least two groups for bargaining purposes. One is the slaughtering division; the other the boning division. The slaughtering division was covered by a bargaining contract known as the "Slaughter House Agreement," while the employees of the boning division were covered by the terms and conditions of a collective bargaining between the local and the Boneless Meat Dealers Association of Philadelphia and vicinity, of which Cross Bros. Hotel Supply, Inc., was not a member. As a result of the "picketing" of the meat plant, defendant made a claim for damages against the local for an alleged violation of the no-strike clause of the Slaughter House Agreement. The tenth provision, entitled "Strikes, Lockouts, Grievances and Arbitrations," of that agreement, entered into by the parties on April 17, 1971, effective through April 21, 1974, set forth the three steps for resolving any differences between the parties as to the interpretation or application of the agreement. The first two steps provide that if no adjustment is reached in either of them then the third is to be

---

1. "Suits for violation of contracts," under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, include an action by a party who seeks to have determined by a declaratory judgment action whether its own conduct in refusing to arbitrate did not violate a labor agreement. RCA v. Association of Professional Engineering Personnel, 291 F. 2d 105, 107 (3rd Cir. 1961), cert. denied, 368 U.S. 898, 82 S.Ct. 174, 7 L.Ed.2d 93.

followed. Since no adjustment was reached concerning its claim against the local in the first two steps of that provision, defendant submitted its claim for damages to arbitration under the rules of the American Arbitration Association ("AAA"). Paragraphs 5 and 6 of defendant's counterclaim, respectively, aver:

"5. Pursuant to the rules of the AAA, the parties mutually selected Professor Emanuel Stein to arbitrate the dispute.

"6. Prior to the arbitration hearing, Local 195 neither filed any protest or objection to the jurisdiction of the AAA or of the arbitrator, nor did it seek to enjoin or refuse to go forward with the arbitration hearing."

These averments are denied in the local's reply to the counterclaim. The local says it did not join in the selection of Professor Stein as the arbitrator and that defendant unilaterally submitted the matter to the arbitrator, that it appeared at the hearing solely for the purpose of objecting to the jurisdiction of the arbitrator and was overruled, that the arbitrator took the jurisdictional argument under advisement and ordered the case to be heard on the merits.

The third step in the grievance procedure is set forth in the tenth provision of the Slaughter House Agreement as follows:

"(c) The grievance shall be submitted to an arbitration board by either party, and the arrangements for the arbitration procedure, including the selection of the third arbitrator, shall be completed within thirty (30) days from the date of the final answer of the Employer. The board of arbitration shall be composed of three members, one selected by the Employer, one selected by the Union, and the third member selected by the first two. If a third arbitrator agreeable to both parties cannot be selected, the parties agree to draw a third arbitrator by lot from names submitted by the American Arbitration Association. The board of arbitration shall have no right to modify, amend or add to the terms of this agreement, or to require of the Employer, the Union or of any employee of the Employer, any act it or he is not required by law or by this agreement to perform. . . . Any decision of the board of arbitration within the scope of its authority shall be final and binding upon both parties during the term of this agreement."

A Federal court is permitted to read a collective bargaining agreement to determine whether on its face the arbitrator had authority to grant the award in question. Bricklayers, Masons, M. & T. Set. No. 7 v. Lueder Const. Co., 346 F.Supp. 558, 562 (D.Neb.1972). A court will not allow the arbitrator to ignore the provisions embodied in an agreement. Price v. International Bro. of Teamsters, etc., 457 F.2d 605, 610 (3rd Cir. 1972). Plainly, subdivision (c) of the tenth provision provides that the grievance shall be submitted to an arbitration panel of three members. Here the grievance was submitted to a single arbitrator. This could not be done under the agreement unless the local consented to it or waived its right to object. According to the pleadings, there is a factual issue whether it did agree or waive its right. If it did neither, a single arbitrator had no authority to resolve the grievance.

The motion of defendant for judgment on the pleadings will be denied.