**AMALGAMATED MEAT CUTTERS & BUTCHER WORKMEN OF NORTH AMERICA, LOCAL 195 AFL–CIO**

v.

**CROSS BROTHERS MEAT PACKERS, INC.**

**Civ. A. No. 72–2223.**

United States District Court.
E. D. Pennsylvania.

March 20, 1974.

Charles G. Nistico, Philadelphia, Pa., for plaintiff.

Leonard J. Bucki, Philadelphia, Pa., for defendant.

## OPINION

BECHTLE, District Judge.

This case is before the Court on cross-motions for summary judgment. The matter had been before us previously on the motion of the employer defendant for judgment on the pleadings in an action whereby the plaintiff, Local Union 195 ("Local") seeks to set aside a labor arbitrator's award for damages in favor of the defendant. The motion was denied because evidence was lacking in the record demonstrating that the Local had consented to one arbitrator instead of a three-member panel deciding the labor dispute between the parties or had waived its right to object to a single ar-

bitrator deciding the matter. 362 F. Supp. 127 (1973).

The defendant employer, Cross Brothers Meat Packers, Inc. ("Packers"), has now supplied the Court with sworn statements tending to support its contention that the Local did in fact consent to submit the dispute to a single arbitrator for resolution.

Packers has two separate collective bargaining agreements with the Local; one for its slaughtering division employees, and the other for its boning division. Although the "no-strike" clause in each is practically identical, the grievance procedures provisions are different. The pertinent portion of the grievance provision in the "Slaughter House" agreement is set forth in our prior Memorandum Opinion. 362 F.Supp. at 129. The comparable provision appears as Section 2 of Article IX of the "Boneless Meat Dealers Association" agreement.[1] Each provision permits that if an adjudgment agreeable to both sides is not reached during the prior procedure, the matter is to be resolved by a single arbitrator in the case of the slaughtering division employees and an impartial chairman when employees of the boning division are involved. When a dispute involving a common nucleus of facts, as here, concerns both groups of employees, apparently the parties could agree to follow the procedure set up in either agreement or insist that each be used for the respective group of employees.

At the outset, it is clear on the face of the agreements that the dispute was a proper subject of arbitration or a deci-

[1]. Section 2 of Article IX of the agreement between the Local and the Boneless Meat Dealers Association ("BMDA") of Philadelphia and vicinity provides: "Section 2. If a grievance arises, it shall be taken up immediately in the first instance with the foreman or other supervisor of the EMPLOYER by the steward. The foreman or supervisor shall render his decision thereon as soon as possible. If no adjustment is thus reached, then the parties hereto agree that any matter in controversy or dispute shall be referred immediately to two (2) representa-

tives, one to be appointed by the UNION and the other by the EMPLOYER for adjustment, and if the two cannot agree, they shall select an Impartial Chairman to whom the matter shall be submitted. The findings and decisions of the Impartial Chairman shall be final and binding upon the parties hereto."

Cross Brothers Meat Packers, Inc., was not a member of the Meat Dealers Association. It, nevertheless, agreed to abide by the agreement entered into by the BMDA and the Local.

sion by a single chairman. The jurisdiction of Professor Emanuel Stein to hear and decide the entire matter was challengeable under the agreements on the ground of an insufficient quorum and that the boning division employees were entitled to have an impartial chairman decide the matter where they were concerned. See, for example, Bethlehem Mines Corp. v. United Mine Workers of Amer., 344 F.Supp. 1161, 1167 (W.D. Pa.1972).

The Local has reiterated its assertion that at no time did it agree to Professor Stein as an arbitrator, nor did it waive its rights to have the matter decided in accordance with the terms of the collective bargaining agreements. In support of this assertion, the Local relies on one event: On the morning the parties appeared at the first arbitration hearing, one of its attorneys, Mark P. Muller, voiced objection to the jurisdiction of the American Arbitration Association ("AAA") and the designated arbitrator, Professor Stein, to arbitrate the dispute. Packers does not deny that the oral objection was made but maintains that it was directed against arbitration in general and if the dispute were arbitrable the Local had no objection to a single arbitrator deciding the merits of the dispute. The Local's objection to his jurisdiction did not expressly include that ground.[2] To show that attorney Muller did not have that ground in mind when the objection was made, Packers submits the affidavit of John Thomas, its industrial manager, which reveals that in the years between 1967 and 1972 all six company-union grievances unresolved at the second step of the grievance procedure were submitted to a single arbitrator for resolution, although the collective bargaining agreement provided for a panel of three arbitrators. If these facts had been presented to the arbitrator, he could have found that the parties had thereby amended the grievance provisions to eliminate the requirement of three arbitrators. Such a finding would have been for the arbitrator, not the Court, to decide. However, those facts do not appear to have been presented to him. Merely because a party to a collective bargaining agreement has a history of agreeing to arbitration before a single arbitrator does not prevent that party as a matter of law from insisting on its right to have a dispute decided as provided in the written agreement. Moreover, the dispute here involved substantial damage claims alleged to have resulted from illegal picketing and is quite different from a case involving a claim by an employee that he was wrongfully discharged. Five of the previous six disputes were of that kind.

Packers, in addition to relying on past procedures, offers the deposition of Earl Helfand, tribunal administrator for AAA, which was taken after the arbitrator made his award. His testimony reveals that the Local itself had initiated the selection of Professor Stein as sole arbitrator and it (Packers) did not agree to have him act as arbitrator until it was informed by AAA that the Local had selected him from the second list of names submitted to the parties by AAA. The parties did not agree on a mutually acceptable individual to act as arbitrator from the first list of names. The issue of consent or waiver of a lack of quorum on the part of the Local was within the province of the arbitrator and not this Court to rule upon. True, the arbitrator did not discuss the matter in his opinion.[3] He is not required to do so. Steelworkers v. Enterprise Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); Sobel v. Hertz, Warner & Co., 469 F.2d 1211 (2nd Cir. 1972).

2. The loser is not permitted for the first time to raise objection to the arbitration panel after the award has been made. Garfield & Co. v. Wiest, 432 F.2d 849 (2nd Cir. 1970), cert. denied, 401 U.S. 940, 91 S.Ct. 939, 28 L.Ed.2d 220; Island Territory of Curacao v. Solitron Devices, Inc., 356 F. Supp. 1 (S.D.N.Y.1973).

3. The Local's brief submitted to the arbitrator to support its position on the merits was equally silent on the subject.

However, the fact that an opinion did not mention the issue does not establish that the arbitrator did not rule upon it. Graham v. Acme Markets, Inc., 299 F. Supp. 1304, 1308–1309 (E.D.Pa.1969). Had Professor Stein been aware of how he was selected before he made his award, it could be said that he found that the Local had consented to his acting as a single arbitrator or had waived its right to object on that ground. We cannot with reason say the opinion decided the matter against the Local on that ground for we do not know whether Professor Stein was aware of how he was selected. Nevertheless, there is a basis for sustaining the jurisdiction of a single arbitrator to decide the dispute. The arbitrator reached the merits and awarded Packers damages. Therefore, it must be presumed that he ruled against the Local on the ground that its objection to his jurisdiction did not encompass the reason it now makes before us.

The Local contends the arbitrator committed several errors of law which require our setting aside his award or refusing to enforce it. For a proper understanding of this contention, a brief statement of the pertinent facts is necessary, including some of the points advanced by it before the arbitrator. The Local was the bargaining representative for three bargaining units. The employees of two of them, the slaughtering division and the boning division of a meat packing plant, were employed by Packers, the defendant in this action; the employees of the third were employed by Cross Brothers Hotel Supply, Inc. ("Supply"). The day after the bargaining agreement between Supply and the Local had expired and while they were legally on strike and picketing their employer's hotel and restaurant supply house, some 20 to 30 Supply employees also picketed the meat packing plant across the street where the employees in the other two bargaining units worked. Although they did not participate in the picketing sponsored by the Local, some 65 slaughtering division and 18 boning division employees, along with delivery and office employees represented by other unions, honored the picket line and did not report for work, resulting in a shut down of the meat packing plant. The Local admitted that it requested employees of Packers to respect the picket line.

Article Tenth of the Slaughter House agreement and Article IX of the Boneless Meat Dealers agreement contain an almost identical "no-strike" clause. It provides: "Section 1. The UNION for itself and for its individual members agrees and guarantees that there shall be no strike, stoppage of work, slowdown or other interference with production . . . The UNION further agrees not to call a sympathy strike for any reason whatsoever during the term of this agreement." Before the arbitrator Packers claimed that the picketing of the meat packing plant by Supply employees and the honoring of that line by Packers employees violated the agreement which had not expired. On the other hand, the Local argued that Packers and Supply were but a single employer with three divisions, in view of their common ownership, industrial management, proximity and high degree of interdependency; therefore, Supply employees, legally on strike against one of the divisions, had the right to picket the building where the employees of the other two divisions worked, and Packers employees had the right to honor that line despite the "no-strike" clause of the subsisting agreements. In support of this position that these actions are protected activity, they cited the "ally doctrine," the application of which is well illustrated in N.L.R.B. v. Local 810, Steel, Metals, Etc., Bro. of Team., Etc., 460 F.2d 1 (2nd Cir. 1972), cert. denied, 409 U.S. 1041, 93 S.Ct. 527, 34 L.Ed.2d 491. Also see Anno., 13 ALR Fed. 466–604 (1972).

The arbitrator ruled that by authorizing the picketing of Packers' plant the Local caused a work stoppage and interfered with production at that plant, thereby breaching the "no-strike" claus-

es of the agreements, and was, therefore, liable for damages to Packers. While so ruling, he concluded that whatever right the Local had against Packers by reason of the "ally doctrine" it had given up that right under the "no-strike" clauses of each agreement with Packers.

The Local insists that the award be set aside because: (1) The arbitrator failed to apply the "ally doctrine"; and, (2) he misinterpreted the reach of the "no-strike" clauses by failing to recognize that the actions of the Local in connection with Supply's employees conducting the picketing cannot be imputed to Packers' employees and, hence, to the Local, since all employees, whether represented by the Local or some other union, had a right to honor the picket lines.

■ The Local would have us apply the same standard in reviewing an arbitration decision as a court of appeals uses in reviewing a decision of the National Labor Relations Board. However, this we are not permitted to do. Steelworkers v. Warrior & Gulf Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). On this subject, our own Court of Appeals has stated in Ludwig Honold Mfg. Co. v. Fletcher, 405 F.2d 1123, 1128 (3rd Cir. 1969):

"Bearing this in mind and perceiving that the Supreme Court's announced standards in reviewing commercial awards call for the exercise of judicial restraint, we must conclude that such a philosophy of restricted review compels even less judicial interference in matters arising from labor arbitration. At the very least this means that the interpretation of labor arbitrator must not be disturbed so long as they are not in 'manifest disregard' of the law, and that 'whether the arbitrators misconstrued a contract' does not open the award to judicial review.

"Accordingly, we hold that a labor arbitrator's award does 'draw its essence from the collective bargaining agreement if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention; only where there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award." (Footnotes omitted.)

■ There is little or no dispute that there was picketing of the meat packing plant by Supply employees and that it was sponsored by the Local—their legal bargaining representative—and that employees of Packers' slaughtering and boning divisions refused to cross the picket line and enter the plant. The principal questions before the arbitrator were whether the picketing was protected activity under the labor law or whether it was outside of the "no-strike" clauses of the agreements. He decided that it was not protected activity, was covered by the clauses; therefore, violating the agreements and rendering the Local liable to Packers for the resulting damages. The arbitrator's decision was not in manifest disregard of the law and the award was rationally derived from the collective bargaining agreements. Both agreements provided that the decisions of the person or persons with the authority to make them "shall be final and binding" upon the parties thereto. Under these circumstances, we may not disturb the award. Consequently, the Local is not entitled to have the award set aside or to an order that it not be enforced, and its motion for summary judgment will be denied. The employer defendant, Packers, is entitled under its counterclaim to have the award enforced or to have judgment entered in the amount of the award.