Haddon Craftsmen, Inc., Appellant, v. Bookbinders Local No. 97.

Argued June 18, 1971. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Sheldon Rosenberg*, with him *Nogi, O'Malley & Harris*, for appellant.

*Paul A. McGlone*, for appellee.

OPINION BY WATKINS, J., September 21, 1971:

This is an appeal from the judgment of the Court of Common Pleas of Lackawanna County, entered on the pleadings, in favor of Bookbinders Local No. 97, AFL-CIO, the defendant-appellee, and against the Haddon Craftsmen, Inc., the plaintiff-appellant.

The defendant-appellee in this case was the duly accredited bargaining agent of the plaintiff company's employees. A contract was in effect. A grievance was filed by the company alleging that the union violated Article VI of the collective bargaining agreement concerning the promotion of apprentice employees to journeymen.

Article VI, Section 10 B of the contract states: "It is agreed and understood by the parties hereto that the

Bookbinders' Local #97 *shall* advance apprentices to Journeymen classification when requested by Management providing the Company advises the Union where and why journeymen are needed." (Emphasis supplied.)

The company filed a written grievance alleging the violation of this section. The written grievance read as follows: "On September 17, 1968, a meeting was held with the officers of the Union in order to advance apprentices to Journeymen classification and the Company advised the Union where and why Journeymen were needed. The apprentices in attendance at this meeting refused to be advanced to the Journeymen status."

The grievance was processed through the prescribed procedure pursuant to the submission of Article I and Article VIII of the contract and no satisfactory solution was reached. The company then demanded arbitration of all the issues and claims as provided in Article VIII. The union refused arbitration.

After prolonged litigation, on August 14, 1967, the United States District Court for the Middle District directed the union to proceed to arbitration. The parties waived the three man board and pursuant to Article VIII, E. L. Keller was selected through the Federal Mediation and Conciliation Service as the sole arbitrator. The request for upgrading apprentices was set forth in the original written grievance and the request for damages was made orally at the arbitration hearing. The arbitrator found that the union violated the contract in failing to advance apprentices and required the union to compensate the company for a total of 37½ hours for each of three journeymen, based on a minimum rate for each person or a total of $404.50.

The union refused to pay the compensation and the company instituted suit in the Court of Common Pleas to collect it. The union complained specifically of the

award of damages alleging that the arbitrator had no jurisdiction to determine damages. Both sides filed motions for judgment on the pleadings. The court below entered judgment in favor of the union. This appeal followed.

The parties agree that this was a common law arbitration and the only issue on appeal was the award of damages to the company by the arbitrator.

Unless the authority of the arbitrator is limited by the agreement of submission, he is the final judge of both law and fact and his award will not be reviewed or set aside for mistake of either. *Wark & Co. v. Twelfth & Sansom Corp.*, 378 Pa. 578, 583, 107 A. 2d 856 (1954).

The court below made a very strict and narrow interpretation of what was binding arbitration. The court confined the arbitration to the written grievance as filed. The court equated the filed grievance with the submission agreement. This was error.

Arbitration was established as an instrument to expedite the formal requirements of trial. Labor arbitration in particular, where most grievances are filed by employees not skilled in drafting and seeking relief from what they consider violations of the bargaining agreement must be interpreted liberally with the provisions of the contract always in mind. The agreements are equitable in nature and so are the arbitration proceedings. Labor arbitration does not follow the strict rules of pleading or evidence. 11 Standard Pennsylvania Practice, Chapter 49, Section 118.

It is true that the company did not specifically request money damages in the written grievance. The request was made orally at the arbitration hearing, as being part of the consequences that would flow from a decision that the union had violated the collective bargaining agreement.

For instance, if an employee filed a grievance alleging his discharge was in violation of his contract—would he be denied reinstatement and back pay merely because he did not specifically set forth these requests in writing the grievance?

Or, if, as counsel for the company contends, an employee filed a grievance in that he was laid off outside of seniority, and protested only his lay off and failed to specifically request in writing that he be restored to his job with lost pay—is he to be denied such reinstatement and pay merely because he failed to put these requests in writing?

Jurisdiction of the arbitrator in these two examples, as well as in the instant case, flows naturally from the grievance machinery set forth in the contract. Otherwise, the usefulness of the arbitration machinery is seriously damaged by such overly strict interpretation.

However, even if we were to agree with the court below that the arbitrator is bound by the submission agreement, we are persuaded that the court erred in equating the written grievance with the submission agreement.

A grievance is a complaint. *United Steelworkers of America v. Westinghouse,* 413 Pa. 358, 196 A. 2d 857 (1964). It is not a submission agreement. The submission agreement is in the collective bargaining contract and that determines the jurisdiction of the arbitrator. In the instant case, the submission agreement can be found in Article I, §2(a) and Article VIII.

"A voluntary submission of a controversy to arbitration, or agreement to arbitrate, is contractual in its nature. . ." 11 Standard Pennsylvania Practice, Chapter 49, Section 31, page 462. A grievance is made by one party without the agreement or even knowledge of the other party. It is not contractual, but only a complaint.

We agree with the company's position that the question that should have been decided by the court below was whether the arbitrator had jurisdiction to award damages based on the submission agreement which is Article I and Article VIII of the contract and the oral request at the hearing.

The general rule in common law arbitration is that the arbitrator's award is conclusive and binding and cannot be attacked unless it can be shown by clear, precise and indubitable evidence that the parties were denied a hearing or that there was fraud, misconduct, corruption or some other irregularity of this nature on the part of the arbitrator which caused him to render an unjust, inequitable and unconscionable award. *Newspaper Guild v. Philadelphia Daily News,* 401 Pa. 337, 164 A. 2d 215 (1960). No such charges were made or filed by the court against the arbitrator in the instant case.

The court below held: "For reasons unexplained by the Arbitrator, he made an award of damages computed on the basis of the average hours worked by the three Journeymen involved. . . This action by the Arbitrator is not a simple mistake, indeed, it has absolutely no support or reason at all in the record."

The decision of the court, therefore, is based upon the examination of the arbitrator's reasoning. It is the clearly stated position of the United States Supreme Court in *Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S. Ct. 1358, 4 L. ed. 2d 1424 (1960), that courts cannot review the merits of an arbitrator's award under a collective bargaining contract, nor is an arbitrator even required to give reasons for his award.

As Mr. Justice DOUGLAS said at page 597: "When an arbitrator is commissioned to interpret and apply the collective bargaining agreement he is to bring his informed judgment to bear in order to reach a fair solu-

tion of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations. The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency. . . He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement."

Arbitrators have no obligation to give reasons for their awards. The court below although there was no inference of fraud, corruption or duress, went behind the award and examined the merits and looked into the reasoning process of the arbitrator. In *Wark & Co. v. Twelfth & Sansom Corp.*, supra, at pp. 580-81, Mr. Justice JONES said: "Stated otherwise, the basic question is whether a party to a consensual arbitration may, in the absence of an allegation of fraud, bias, or the like, set upon an inquiry, into the reasons and the mental processes by which the arbitrators arrived at their award. . ." And further at page 586: " '(Courts) may not "probe the mental processes" of an administrative officer "in reaching his conclusions if he gave the hearing which the law required." . . . We may not assume that the Board neither considered the evidence nor read the respondent's brief . . ., nor may we in such circumstances "probe the mental processes" of the Board "In reaching (its) conclusions" . . .' The rule is equally applicable in respect of arbitration proceedings. 'There is no authority which sanctions an inquisition of arbitrators for the purpose of determining the processes by which they arrived at an award. An arbitrator who is a quasi-judicial officer should not be called upon to give reasons for his decision' . . . Were the rule otherwise, the judgment of the court would be substituted in the place of the arbitrators' award, and arbi-

tration instead of being a substitute for legal process and procedure would become but the first step in the course of litigation."

It might be noted that the decision of the court in the instant case would require an additional arbitration to determine damages as it has already been determined by the court's opinion that there was a violation of the contract. This would clearly result in a multiplicity of proceedings so that instead of arbitration being a vehicle to expedite justice, it results in a multiplicity of proceedings delaying justice.

Article 1, §2(a) of the Collective Bargaining Contract provides: "It is agreed between the parties hereto that the Grievance Procedure provided for in Article VIII is adequate if followed in good faith by both parties for the fair and expeditious settlement of all grievances or complaints of any nature. . ." And in the second paragraph of Article VIII, the arbitrators' jurisdiction is made very broad: ". . . for the adjustment of any grievance which may arise (a) on a change in any shop condition or practice; (b) or on the construction to be placed on this agreement or any part thereof; and (c) on any violation of this agreement." The agreement in paragraph five, Article VIII made the arbitrator's decision "final and binding on both sides thereto."

Chapter 49, Section 151, 11 Standard Pennsylvania Practice, provides: "Where the parties to a submission of a controversy agree or stipulate that the decision of the arbitrators shall be final and conclusive, the courts will grant no relief to either party, except for fraud or misbehavior."

The order of the court below is reversed and the record remanded with directions that judgment for the plaintiff be entered in accordance with this opinion.