**KEYSTONE PRINTED SPECIALTIES CO., INC., Petitioner,**

v.

**SCRANTON PRINTING PRESSMEN AND ASSISTANTS UNION NO. 119, Respondent.**

No. 74–482 Civil.

United States District Court,
M. D. Pennsylvania.

Dec. 9, 1974.

**418**

Sheldon Rosenberg, Jacob Nogi, Nogi, O'Malley & Harris, Scranton, Pa., for petitioner.

Ira H. Weinstock, Elliot A. Strokoff, Handler, Gerber & Weinstock, Harrisburg, Pa., for respondent.

SHERIDAN, Chief Judge.

This case was brought under the Labor Management Relations Act of 1947, § 301, 29 U.S.C.A. § 185(a),[1] to vacate an award of a board of arbitration. The action is before the court on the parties' cross-motions for summary judgment. For the reasons given infra, petitioner's motion will be denied; respondent's will be granted, and the arbitrators' award ordered enforced. The parties have also moved for counsel fees to be awarded; these motions will be denied.

In May of 1965, Frank Hayner entered into the employ of the petitioner, Keystone Printed Specialties Company (hereinafter "Company"). In November of 1971, six pressmen, who were members of the respondent, Scranton Printing Pressmen and Assistants' Union No. 119 (hereinafter "Union") were employed by the Company. These pressmen, in the order of their length of service with the Company, were: Walter Mersch, Howard Gilday, William Keib, Hayner, Charles Browning and William Bowen. At that time, Hayner had been the Union Chapel Chairman for two and one-half years.

On the Monday before Thanksgiving 1971, the Company posted a notice informing the pressmen that, effective Thanksgiving Day, the plant would close down and that there would be no work until further notice. The pressmen were to call in the following Monday to see if work was available. Hayner called in that Monday, and periodically through the middle of January, to see if there was work for him. The Company's response was that there was not.[2] However, during this period all the other pressmen, except Walter Mersch who had retired, resumed work. In addition, two helpers were also recalled in December, and new journeymen were hired by the Company subsequent to the layoff to work in the offset department.

The collective bargaining agreement provides for a six member committee, with an equal number of union and employer members to adjust differences under the contract and to which "shall be referred all questions which arise during the life of this contract, relative to interpretation or alleged violation thereof, which cannot be settled otherwise. . . ." Collective Bargaining Agreement (hereinafter "Contract"), Para. 3 at 15. This committee, in the event of an impasse, is augmented by a seventh member and becomes the Board of Arbitration. "[P]ending arbitration and decision thereunder, . . . there shall be no strike or lockout, and the award of the arbitrators shall in all cases be final." Id., Para. 8 at 16.

The Union grieved the perpetual layoff and constructive discharge of Hayner, who had seniority over other pressmen who had been recalled to work. Because of the Company's refusal to agree or to arbitrate, the Union filed suit in this court seeking to compel the Company to arbitrate the matter (Civil Action No. 73–83). The suit was dismissed on stipulation of counsel when it appeared that the Company agreed to submit to arbitration.

On January 14, 1974, the first of two arbitration hearings was held. On February 7, 1974, a second hearing took place. The Union position was that the Company's failure to recall Hayner to

1. The Act provides, in pertinent part, that:
   "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties. . . ." 29 U.S.C.A. § 185(a).

2. Uncontradicted evidence was introduced at the arbitration hearing that the operating head of the Company told Hayner in February 1972, that "Hayner was getting to be a trouble-maker as Chapel Chairman and that he [the operating head] was not going to take him back, whatever happens." Op. of Arbitrator at 6.

work was in violation of the seniority protection afforded him by the collective bargaining agreement between the Company and the Union. The Board of Arbitrators found that such a seniority protection did exist and that it warranted the recall of Hayner. Accordingly, on May 28, 1974, the Board of Arbitrators handed down its opinion and award, ordering that Hayner be reinstated with back pay.

The Company refused to honor the arbitration award and on June 7, 1974, filed a "Petition to Vacate Arbitrators' Award" in the Court of Common Pleas of Lackawanna County, Pennsylvania. On June 21, 1974, the action was removed to this court by the Union. In its response to the Company's petition, the Union set forth a denial and a counterclaim for an order enforcing the arbitrators' award and costs of suit, including attorney's fees.

In attacking an award by an arbitrator four issues might theoretically be raised: (1) whether the collective bargaining agreement provides for the arbitration procedure utilized in the case; (2) whether the dispute was arbitrable; (3) whether the arbitrator reached the proper decision under the facts of the dispute; and (4) whether the award rendered was proper.

Here, it is now undisputed that the submission of the grievance to the Board of Arbitration was in accordance with the provisions of the Contract. Scranton Printing Pressmen and Assistants' Union No. 119 v. Keystone Printed Specialties Co., Inc., M.D.Pa.1973, Civil Action No. 73–83; *accord,* United Steelworkers of America v. American Mfg. Co., 1960, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (hereinafter "Steelworkers #1").

The arbitrability of Hayner's grievance, however, forms a central issue in the Company's contentions. The Company would have us rule that the Board of Arbitration did not have the power under the Contract to resolve the instant controversy.[3] Alternatively, if the Board, under the agreement, did have the abstract power to rule on the matter, the Company urges that the Union, by alleging violations of four specific paragraphs in the agreement, narrowed the controversy to the area of those four paragraphs. If this is accepted, argues the Company, the award should be void for exceeding the Board's limited jurisdiction.

In support of the first of these propositions, the Company points to the paragraph of the Contract setting forth the power of the Board of Arbitration:

"The arbitrators shall be limited to the issues presented to them and shall have no power to add to, detract from, or modify any of the terms of this agreement, nor to establish and change any wage rate unless the same is subject to change in accordance with the agreement, or to decide matters which are properly the subject of collective bargaining." Para. 5, p. 15.

It is the Company's position that the issues here disputed involve "matters which are properly the subject of collective bargaining" and hence are not arbitrable.

The law favors arbitration of labor disputes. Napa Pittsburgh, Inc. v. Automotive Chauffeurs Local 926, 3 Cir. 1974, 502 F.2d 321, 323 (en banc), cert. denied Dec. 10, 1974, —— U.S. ——, 95 S.Ct. 625, 42 L.Ed.2d 644. Under United Steelworkers of America v. Warrior & Gulf Navigation Co., 1960, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (hereinafter "Steelworkers #2"):

"Apart from matters that the parties specifically exclude, all of the questions on which the parties disagree must therefore come within the scope of the grievance and arbitration provisions of the collective agree-

---

3. It should be noted at the outset that this position is contradicted by the signed stipulation filed in the earlier action where the Company agreed to submit this dispute to arbitra-

tion. *Cf.* Local 719, Bakery Wkrs. v. National Biscuit Co., 3 Cir. 1967, 378 F.2d 918, 921.

ment. The grievance procedure is, in other words, a part of the continuous collective bargaining process. It, rather than a strike, is the terminal point of a disagreement." 363 U.S. at 581, 80 S.Ct. at 1352.

Moreover, the purpose to exclude certain matters from arbitration under bargaining agreement must be clearly spelled out; "[d]oubts should be resolved in favor of coverage." Steelworkers #2, supra, 363 U.S. at 583, 80 S.Ct. at 1353; accord, Gateway Coal Co. v. U.M.W., 1974, 414 U.S. 368, 377, 94 S.Ct. 629, 38 L.Ed.2d 583. An issue must be referred to arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of a construction that covers the asserted dispute. Steelworkers #2, supra, 363 U.S. at 582, 80 S.Ct. 1347; accord, Super Mkt. Serv. Corp. v. Teamsters Local 29, M.D.Pa.1972, 340 F.Supp. 1143. This is a high, though not unassailable, presumption favoring arbitration. Gateway Coal Co. v. U.M.W., supra; Local 464, Bakery Wkrs. v. Hershey Chocolate Corp., M.D.Pa., 310 F.Supp. 1182, aff'd, 3 Cir. 1970, 433 F.2d 926; see Affiliated Food Distributors, Inc. v. Local 299, Teamsters, 3 Cir. 1973, 483 F.2d 418, cert. denied 1974, 415 U.S. 916, 94 S.Ct. 1412, 39 L.Ed.2d 470.

■■ If the Company's position were to be adopted, it is difficult to conceive of any grievance over which the Board would have jurisdiction. Every claim that might come before it would deal in one way or another with wages, hours or working conditions. "The congressional policy manifest in the Act is to enable the parties to negotiate for *any protection either deems appropriate* . . .." NLRB v. Burns Security

Services, 1972, 406 U.S. 272, 288, 92 S.Ct. 1571, 1582, 32 L.Ed.2d 61 (emphasis added). In fact, any issue not prohibited by the Act may be discussed by the parties. And while there is no duty to discuss a non-mandatory subject, if the parties do come to an agreement with respect to such a subject, it may "properly" be made part of a collective bargaining agreement. NLRB v. Wooster Div. of Borg-Warner Corp., 1958, 356 U.S. 342, 78 S.Ct. 718, 2 L.Ed. 2d 823, Marine & Shipbuilding Wkrs. Union v. NLRB, 3 Cir. 1963, 320 F.2d 615, cert. denied 1964, 375 U.S. 984, 84 S.Ct. 516, 11 L.Ed.2d 472. The parties cannot be regarded as having created a dispute settlement procedure with no capacity for deciding any dispute which might arise. Ludwig Honold Mfg. Co. v. Fletcher, 3 Cir. 1969, 405 F.2d 1123, 1131. See Restatement of Contracts § 236; Williston, Interpretation and Construction of Contracts, Ch. 22, § 619. As the Chairman of the Board of Arbitrators persuasively [4] wrote:

"The exclusion from the arbitration process of '. . . matters which are properly the subject of collective bargaining,' can only be read to mean that the arbitrators may not make an award that is not based upon an interpretation or application of the collectively bargained agreement." Op. of Arb. at 3–4.

■■ The question of the interpretation of a labor contract is a question for the arbitrator. "It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." United

---

4. As further support for this construction, it was noted:

"The seniority principle in lay-off and recall must be regarded as applicable by virtue of the aforementioned contractual and Constitution and Laws' provisions. This conclusion is reinforced by the provision of the contract appearing as Paragraph 6, on page 12, [supra]. . . . There is no logical way to explain the presence of this provision in the Agreement if seniority is not the guiding principle in recall from lay-off. If a senior employee is not entitled to priority in recall, what reason could there be for a provision permitting a junior employee to be recalled under the circumstances described? The very declaration of the exception assumes the existence of and agreement upon the rule from which variation is being permitted." Op. of Arbitrator at 8–9.

Steelworkers of America v. Enterprise Wheel & Car Corp., 1960, 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (hereinafter "Steelworkers #3"); *accord,* Ludwig Honold Mfg. Co. v. Fletcher, supra; Local 719, Bakery Wkrs. v. National Biscuit Co., 3 Cir. 1967, 378 F.2d 918. *But see* Magnavox Co. of Tenn. v. International U. of Elec. Wkrs., E.D.Tenn.1968, 287 F.Supp. 47, 50, aff'd, 6 Cir. 1969, 410 F.2d 388. In the instant case, moreover, we agree with the Board of Arbitrators that the Board does possess the power to resolve the dispute here in controversy.

At the Company's request, the Union specified four paragraphs of the collective bargaining agreement as having been violated so as to give rise to the grievance.

"Leaves of Absence

"Termination of employment will result if the employee fails:

(a) To submit a written request for leave of absence.

(b) To report to work when leave of absence is not granted or not extended.

(c) To submit doctor's certificate within a period of ten (10) days when requested to do so by the Employer. [Para. 4, p. 12]

. . . .

"The parties further agree that qualified employees with lesser seniority shall be allowed to fill all vacancies if they are available to return to work sooner than employees having greater seniority. [Para. 6, p. 12]

"General

"The Constitution and By-Laws of the parties of the second part [the Union], shall be a part of this Agreement, and shall not be subject to local arbitration. [Para. 1, p. 13]

"A Multilith Pressman will not be allowed to operate any other presses unless he holds a journeyman's card for those presses." [Para. 7, p. 14]

The Constitution and Laws of the International Printing and Assistants'

Union of North America, in part, provide:

"Seniority

"In the event of a decrease in the force of any plant such decrease shall be accomplished by laying-off first the person or persons last employed. Should there be an increase in the force in ninety (90) days, the person or persons displaced through such cause shall be reinstated in the reversed order in which they were laid off before other help may be employed." Art. XXIV, Sec. 51.

It is the Company's contention that the passages quoted above limit the subject matter into which the arbitrators may inquire. We do not agree.

"Arbitration was established as an instrument to expedite the formal requirements of trial. Labor arbitration in particular, where most grievances are filed by employees not skilled in drafting and seeking relief from what they consider violations of the bargaining agreement must be interpreted liberally with the provisions of the contract always in mind. The agreements are equitable in nature and so are the arbitration proceedings. Labor arbitration does not follow the strict rules of pleading or evidence. . . ." Haddon Craftsmen, Inc. v. Bookbinders Local 97, 1971, 220 Pa.Super. 206, 209, 281 A. 2d 713, 715.

The idea of the specification of issues with precision prior to an arbitration by means of a document in the nature of a complaint would create an orderliness appealing to the legal mind. Moreover, given the acceptance of such a scheme, logic would dictate that the proofs adduced at the arbitration proceeding be limited to those issues "joined." But boards of arbitration are not common law courts. Embodying more a modern law merchant, labor arbitration proceeds within the context described in Steelworkers #2, 363 U.S. at 581, 80 S.Ct. at 1352.

". . . [T]he grievance machinery under a collective bargaining agreement is at the very heart of the system of industrial self-government. Arbitration is the means of solving the unforeseeable by molding a system of private law for all the problems which may arise and to provide for their solution in a way which will generally accord with the variant needs and desires of the parties. The processing of disputes through the grievance machinery is actually a vehicle by which meaning and content are given to the collective bargaining agreement."

■ In Textile Workers Union v. American Thread Co., 4 Cir. 1961, 291 F.2d 894, 896, the court held that an arbitration award is unenforceable if it is apparent that it clearly goes "beyond the scope of the submission." *Accord,* H. K. Porter Co., Inc. v. United Saw Prod. Wkrs., Local 22254, 3 Cir. 1964, 333 F.2d 596; Shahmoon Indus. Inc. v. United Steelworkers, D.N.J.1966, 263 F.Supp. 10, 14. As far as it goes, this undoubtedly correctly states the law. The court in the Fifth Circuit has admonished, "we should . . . [resist] the temptation to 'reason out' a la judges the arbiter's award to see if it passes muster." Safeway Stores v. Bakery Wkrs. Local 111, 5 Cir. 1968, 390 F.2d 79, 83. The documents making up the "submission" to the arbitrator should not be subjected to the same searching scrutiny as are the pleadings in a federal court under a motion to dismiss for failure to state a claim upon which relief can be granted.

"Courts have deferred to arbitration as a practical and peaceable means of resolving labor disputes. But much of the value of arbitration in this regard will be destroyed if the arbitrators refuse to consider the merits of a grievance based upon a hyper-technical theory of 'pleading'—one that seizes upon random correspondence of the parties as rigidly stating their formal positions. Such a system of 'pleading' by discouraging negotiation and discussion between the parties, would certainly not promote industrial peace—one of the primary aims of federal labor law. . . ." Amalgamated Food Wkrs. Local 56 v. Great A. & P. Co., 3 Cir. 1969, 415 F.2d 185, 189–190.

We cannot say that the Board exceeded its jurisdiction in this matter. "When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a a fair solution of a problem." Steelworkers #3, 363 U.S. at 597, 80 S.Ct. at 1361. Moreover, the same case held that arbitrators have no obligation to the court to give their reasons for an award. *Id.* at 598, 80 S.Ct. 1358, *accord,* Bernhardt v. Polygraphic Co. of America, Inc., 1956, 350 U.S. 198, 203–204, n. 4, 76 S.Ct. 273, 100 L.Ed. 199; L. O. Koven & Bro., Inc. v. Steelworkers Local 5767, 3 Cir. 1967, 381 F.2d 196, 201.

■ Counsel for the Company stated on oral argument that while he could find no supporting cases, it was his contention that for this award not to be void after submission on four specified paragraphs, the arbitrators must state exactly which paragraph was violated. Since arbitrators do not even have to give opinions, it would be a strange rule of law which would require the result here urged. Such a rule has not been accepted by the district courts of this circuit,[5] Amalgamated Meat Cutters Local 195 v. Cross Bros. Meat Packers, Inc., E.D.Pa.1974, 372 F.Supp. 1274, 1276–1277; Graham v. Acme Markets Inc., E.D.Pa.1969, 299 F.Supp. 1304; *accord,* Haddon Craftsmen, Inc. v. Book-

---

5. However, a complaint affirmatively charging that the arbitrator had not "even considered the [appropriate] provisions . . . of the agreement" may make necessary an evidentiary hearing before a ruling on a motion for judgment can issue. Graham v. Acme Markets, Inc., 3 Cir. 1968, 401 F.2d 539, 540.

binders' Local 97, supra; *see* American Can Co. v. Papermakers Local 412, E.D. Pa.1973, 356 F.Supp. 495, 499, and we also decline to so hold. The better standard is to enforce the arbitration award unless it is clearly beyond the scope of the submission. Textile Workers' Union v. American Thread Co., supra; Shahmoon Indus. Inc. v. United Steelworkers, supra. *See* Safeway Stores v. Bakery Wkrs. Local 111, supra, 390 F.2d at 82–84.

Here, the opinion of the Board of Arbitrators states, "The award herein is . . . based . . . upon the right of Hayner to be recalled from layoff prior to an employee with less seniority." At 7. The opinion goes on to quote the contract clause incorporating the Union's Constitution and By-Laws and the By-Law section dealing with seniority, both set out supra. Since the "Constitution" clause was one of the four to which the Company claims the arbitrators were limited, even under this assertedly restricted grant of jurisdiction, the arbitrators' decision is not void. *See* Dallas Typographical Local 173 v. A. H. Belo Corp., 5 Cir. 1967, 372 F.2d 577, 581.

The scope of judicial review of an arbitrator's decision, after completion of the analysis above, is extremely limited. "Were the rule otherwise, the judgment of the court would be substituted in place of the arbitrators' award, and arbitration instead of being a substitute for legal process and procedure would become but the first step in the course of litigation." Wark & Co. v. Twelfth & Sansom Corp., 1954, 378 Pa. 578, 586, 107 A.2d 856, 860. The federal policy of settling labor disputes by arbitration would be undermined if the courts were given the final say on the merits of an award. Steelworkers #3, 363 U.S. at 596, 80 S.Ct. 1358. The Third Circuit has held that an arbitrator's award—even if mistaken in law or fact—will not be overturned unless it is irrational, arbitrary or capricious, in manifest disregard of or fails to draw its essence from the collective bargaining agreement.[6] Ludwig Honold Mfg. Co. v. Fletcher, 3 Cir. 1969, 405 F.2d 1123; *accord,* Swift Indus., Inc. v. Botany Indus., Inc., 3 Cir. 1972, 466 F.2d 1125, 1131; *see* Federal Labor Union 18887 v. Midvale-Heppenstall Co., 3 Cir. 1970, 421 F.2d 1289. An award draws its essence from the collective bargaining agreement if "the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention; only where there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award." Ludwig Honold Mfg. Co. v. Fletcher, supra, 405 F.2d at 1128 (footnote omitted).

Here, the contract provision incorporating the Union's Constitution and By-Laws, set out in full, supra, con-

---

6. An award may also be overturned where, for example, there was fraud, bias or misconduct on the part of the arbitrator, *e. g.,* Commonwealth Coatings Corp. v. Continental Cas. Co., 1968, 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301. Other grounds for vacating the award include the facts that the award violates the law, *e. g.,* Glendale Mfg. Co. v. Local 520, ILGWU, 4 Cir. 1960, 283 F.2d 936, cert. denied 1961, 366 U.S. 950, 81 S.Ct. 1902, 6 L.Ed.2d 1243, that the award is vague or ambiguous, *e. g.,* Hanford Atomic Metal Trades Council v. General Electric Co., 9 Cir. 1965, 353 F.2d 302. *See generally* Local 719, Bakery Workers v. Nat'l Biscuit Co., 3 Cir. 1967, 378 F.2d 918, 925–926; Schlesinger v. Building Serv. Emps. Local 252, E.D.Pa.1973, 367 F.Supp. 760, 764. On the other hand, where there were two arbitrators interpreting the same provision under collective bargaining agreements between an employer and two bargaining units, and each arbitrator reached an opposite conclusion, both inconsistent awards would be valid as each related to members of each union's collective bargaining unit. American Sterilizer Co. v. Local 832, UAW, W.D.Pa.1968, 278 F.Supp. 637.

tains the admonition that they "shall not be subject to local arbitration." Para. 1 at 13. The Board of Arbitration did not find this prevented local arbitrators from enforcing employee rights created by the Union in its Constitution and agreed to by the Company in the Contract. The local arbitration provision "is nothing more than a reaffirmation of the principle expressed elsewhere that, as in the case of other provisions of the Agreement, those provisions from the Union's Constitution and Laws that are incorporated by reference, cannot properly be change[d] or modified by the arbitrators." Op. of Arb. at 8. Here the Board is enforcing—not changing—the Union's Constitution. The result here is rationally derived from the agreement, and there can be no question that it properly draws its essence from the agreement as well. Therefore, under the limited scope of review available to this court, the result reached by the arbitrators was proper.

Concerning the propriety of the award, Steelworkers #3 controls. As a specialized mechanism for dispute resolution, arbitration must be allowed flexibility in formulating remedies to meet a wide variety of situations. The award may draw from many sources as long as it draws its essence from the collective bargaining agreement. 363 U.S. at 597, 80 S.Ct. 1358. The arbitrator should be given wide latitude in fashioning an appropriate remedy under the contract. Mogge v. Dist. 8, Int'l Assn. of Machinists, 7 Cir. 1971, 454 F.2d 510, 514. *Accord,* Ludwig Honold Mfg. Co. v. Fletcher, supra; *see* Swift Indus., Inc. v. Botany Indus., Inc., supra. Therefore, the award was proper.

Accordingly, the arbitrators' award will be enforced.

The foregoing shall constitute the court's findings of fact and conclusions of law.