Perkiomen Valley Education Association, Appellant *v.* Perkiomen Valley School District, Appellee.

Argued April 6, 1983, before Judges ROGERS, CRAIG and MACPHAIL, sitting as a panel of three.

*A. Martin Herring,* for appellant.

*C. Stephens Vondercrone, Jr., Pearlstine, Salkin, Hardiman and Robinson,* for appellee.

OPINION BY JUDGE ROGERS, June 3, 1983:

The Perkiomen Valley Education Association (union) here appeals from an order of the Court of Common Pleas of Montgomery County vacating in part an award of an arbitrator made in response to the union's grievance challenging the legality and propriety under the applicable collective bargaining agreement of the manner in which the Perkiomen Valley School District had in the past and proposed in the future to evaluate its professional teaching personnel. The issue presented is that of whether the court of common pleas correctly determined that the arbitrator exceeded his powers by ordering the district to expunge from each teacher's personnel record the result of an evaluation previously conducted by building principals and administrators and to give each of its teachers instead the maximum permitted rating of 20 points in each category of competence evaluated. We affirm.

The facts are in material part undisputed. On October 17, 1979, the district's superintendent of schools notified the union's president that the district proposed to convert its previous scheme of professional employee evaluations, which was predicated on a descriptive scale of assessed performance ranging from "outstanding" to "unsatisfactory," to a numerical evaluatory system based on a scale from zero to twenty in each of four categories which change was re-

quired, in the district's view, by the Commonwealth Department of Education, including the Department's rating form promulgated as a regulation and denominated the DEBE-333.[1] Specifically, as appears in a memorandum to all professional staff from Superintendent Wescott dated February 25, 1980, the district proposed the following formula for converting the old system into the new to be effective beginning with the spring term 1980 evaluations:

(1) A rating of "outstanding" would become a rating of 20.

(2) A rating of "meets expectations" would be assigned a number rating in the range of 14-18.

(3) A rating of "unsatisfactory" would become a rating of 10.

Meetings with professional staff on the matter of converting to the new system were conducted by the district's administrators in each of the district's schools between October, 1979 and February, 1980 when the final recommendation, outlined above, was announced. The union then filed a grievance pursuant to Article II of the collective bargaining agreement asserting:

Rating procedures in all schools in the district were in violation of Pa. School Code (351.22-351.28) and Professional Staff Policies were changed during the term of the contract.

The grievance was denied by the district administration on June 25, 1980[2] and was submitted to an arbitrator on August 22, 1980. Apparently, the evidentiary proceedings before the arbitrator were not tran-

---

[1] See 22 Pa. Code §351.21 and the Department's Form DEBE-333.

[2] The stated reason for denial was the Superintendent's conclusion that a challenge to the evaluations of individual teachers by the DEBE-333 form should not be pursued, as was the challenge before him, in the form of a "group grievance."

scribed,[3] but we learn from the arbitrator's written decision, dated September 29, 1980, that, in addition to its contentions related to the use of the numerical evaluatory system embodied in the Department's DEBE-333 form set forth in the arbitration submission—that the collective bargaining agreement had been breached by the district's alteration of professional staff policies and that the district's rating procedures were in violation of Departmental regulations—the union also adduced evidence before the arbitrator intended to demonstrate that the evaluation of individual teachers in the present and prior school years had not been attended by the protections and benefits described in the union's Exhibit A-6, an unsigned memorandum styled "Perkiomen Valley School District Board Policy" dated August 24, 1970, and requiring, *inter alia,* that evaluations of teachers take place before March 1 of each year; that at least two additional yearly observations be performed with respect to any teacher receiving an unsatisfactory rating; and that a conference and written evaluation be held following each evaluation. On this additional issue the arbitrator found:

> The Association presented numerous witnesses from different schools who had received ratings of less than 20 points who were not supplied or shown anecdotal records[4] and did not have a conference or conferences. Their testimony specifically demonstrated that the District did not follow the guidelines for evaluating. (Footnote added.)

The arbitrator then rejected the union's two original contentions holding that the use of the numerically oriented DEBE-333 evaluation form was not pro-

---

[3] *See* §7307(b) of the Uniform Arbitration Act, 42 Pa. C. S. §7307 (b), which permits but does not require stenographic recordation.

[4] The origin of this mandate is unclear. It is not contained in the Union's Exhibit A-6.

scribed by the Public School Code of 1949 or by any regulations promulgated by the Department and that although the district, by using the new numerical form, altered some professional staff policies, it did so in conformance with Article II(3) of the parties' collective bargaining agreement permitting such alterations where the union is given thirty-days' notice in writing and an opportunity to appear before the school board. Thus, the arbitrator rejected the union's contentions as contained in the written arbitral submission.

However, as we have indicated, the union evidently additionally argued during the course of the unrecorded hearing, and the arbitrator found, that the district had violated its own policies in the manner in which it had conducted professional staff evaluations in the 1979-1980 school year. On the matter of the appropriate relief for this violation, the arbitrator wrote the following:

The more difficult problem is the remedy for evaluations which must be annulled because of faulty procedures. First, the rights of all staff members to grieve is hereby preserved. I have accepted this procedure as a proper group grievance. There is no requirement which compels the individual employees to file separate grievances. In this case, the Association and the District would have an undue burden if every grievance had to be considered individually. This would virtually dominate all the time of the school year to the disadvantage of both parties. Accordingly, once having reached the conclusion that the evaluations are faulty, I am obliged to reach the most practical solution without placing an onerous task on the District and Association of reviewing each evaluation for the year. This can be accomplished only by adjusting the

ratings to 20 in each of the four categories contained on the DEBE-333 form for staff during 1979-80.

Accordingly, the following award is made:

## AWARD

. . . .

4. The evaluation procedures were faulty and the ratings must be annulled.

5. All numerical ratings shall be raised to 20 in each of the four categories specified on the DEBE-333 form.

The court of common pleas held and the district appellee now argues that by this portion of his decision and award the arbitrator exceeded his powers because the question of whether the district had violated its own policies having to do with the timing of evaluatory observations and with conferences and anecdotal records was not expressly included in the written submission to the arbitrator and because the relief afforded; that is, maximum ratings required to be given to all teachers, is improper and beyond the necessities of the case. We agree that the relief ordered by the arbitrator was not within his power to grant.[5]

In the *Washington Arbitration Case,* 436 Pa. 168, 259 A.2d 437 (1969), the Court held that an arbitration

---

[5] We do not agree with the district's contention that the arbitrator's award must be vacated because the issue decided in the union's favor was not an explicit part of the written submission to the arbitrator. The applicable legal principles are fully explored in the case of *Haddon Craftsmen, Inc. v. Bookbinders' Local No. 97,* 220 Pa. Superior Ct. 206, 281 A.2d 713 (1971) where it was held that written arbitral submissions, usually drafted by unrepresented lay persons, are not to be scrutinized with the particularity appropriate to judicial pleadings and that so long as the issue is ultimately presented to the arbitrator in some proper manner as by oral demand at the hearing and is an issue within the arbitrator's competence, relief may be granted.

panel could not require the city to provide hospitalization insurance coverage to the familiies of its police officers because the city had no legislated power to enter into such insurance contracts. The Court reasoned:

> In spite of the fact that neither the relevant constitutional provision nor the enabling legislation clearly delineates the power of the arbitration panels, we are of the opinion that such panels may not mandate that a governing body carry out an illegal act.
>
> . . . .
>
> The essence of our decision is that an arbitration award may only require a public employer to do that which it could do voluntarily.

*Id.* at 176-177, 259 A.2d at 440. Although the holding of the *Washington Arbitration Case* has been applied primarily in the review of interest arbitration awards under Act No. 111[6] we see no reason why its mandate is not equally applicable to the arbitrator's award in the matter of an employee's grievance filed pursuant to contractual grievance arbitration procedures. *See Dubois Area School District v. Dubois Area Education Association,* 47 Pa. Commonwealth Ct. 143, 408 A.2d 167 (1979) *appeal dismissed,* 497 Pa. 348, 440 A.2d 1191 (1982) (gievance arbitration award could not require public employer to violate the Weather Emergency Bill, Act of June 1, 1977, P.L. 4, 24 P.S. §15-1501.1). Moreover, the rule of the *Washington Arbitration Case* has been effectively incorporated in the parties' collective bargaining agreement which, in Article II, (4) (c), limits the power and authority of the arbitrator as follows:

---

[6] Act of June 24, 1968, P.L. 237, 43 P.S. §217.1.

The arbitrator may rule only upon the meaning, interpretation, or application of any provision in the Agreement; he shall be without power or authority to make any decision which requires the commission of an act prohibited by law. . . .

The issue, then, is whether a school district could lawfully and voluntarily determine (in order, perhaps, to save money and the valued time of administrative personnel or to promote labor peace) to perform no individualized evaluations of its professional teaching staff but, instead, to simply award each staff member a perfect, meaning "outstanding," score on the DEBE-333 evaluatory form. We think not. Section 1123 of the Public School Code of 1949,[7] 24 P.S. §11-1123 and the Department's regulations found at 22 Pa. Code §351.21 both require that teachers be individually evaluated; that the evaluations must be performed by or under the direction of the district's superintendent of schools or the building principal; that the evaluations "shall give due consideration to personality, preparation, technique, and pupil reaction . . ."; and Section 11-1123 of the School Code additionally requires that the results of the evaluation shall be recorded on "rating cards to be prepared by the Department. . . ." Awarding each professional staff member a perfect score is not an evaluation, individual or otherwise, does not give any consideration to the personality or the preparation or the technique or the pupil reaction of the teachers so scored, and does not record the result of any evaluation or rating. It is too clear for serious argument to the contrary that a school district determining to so avoid the onerous and often controversial but necessary requirement of professional staff evaluations would be in violation of statutory and regulatory mandate. It should also be

[7] Act of March 10, 1949, P.L. 30, *as amended.*

noted that by awarding perfect scores universally and indiscriminately a district would inject chaos into the precise and detailed statutory provisions governing the rating dependent termination and suspension of professional employees[8] as well as any contractual provisions having to do with merit wage increases.[9]

Therefore, the award of the arbitrator, insofar as it requires the district to award perfect scores to each of its professional employees, was properly vacated by the Court below. The arbitrator could not within his lawful powers order the district to take such action because the district could not lawfully embark on such a program voluntarily.

Order affirmed.

### ORDER

AND Now, this 3rd day of June, 1983, the order of the Court of Common Pleas of Montgomery County in the above-captioned matter is hereby affirmed.

---

[8] *See* Sections 1123 (terminations for incompetency) and 1124 (suspensions) of the Public School Code of 1949, 24 P.S. §§11-1123 and 11-1124.

[9] The contractual relationship binding the instant parties apparently includes such a provision. *See* Article V(3)(g).